# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| TANYA LOGGINS, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| V. | )       **Case No. 4:14CV1362NCC** |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Tanya Loggins (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 15). Defendant has filed a brief in support of the Answer. (Doc. 20). Plaintiff has filed a Reply. (Doc. 21). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 10).

# I.
# PROCEDURAL HISTORY

On October 11, 2011, Plaintiff filed her applications for DIB and SSI. (Tr. 13, 28, 86-88). Plaintiff alleged a disability onset date of September 1, 2009. Plaintiff's applications were denied, and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 10-13, 28-29). After a hearing, by decision, dated May 31, 2013, the ALJ found Plaintiff not disabled. (Tr. 13-27). On June 2, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 2-7). As such, the ALJ's decision stands as the final decision of the Commissioner.

# II.
# LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The

Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th

Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v.

Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's

conclusion.  See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence").  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969,

972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff claimed she became disabled on September 2, 2009, at the age of 38, due to difficulty understanding, thoughts of suicide, depression and hypertension. (Tr. 86, 114). At the hearing, Plaintiff testified that she sometimes had problems communication with people; she like to stay to herself; she heard

"things a lot and sometimes when [she] react[ed] on it" she got in trouble; she would get depressed "a lot that sometimes [she] just start[s] crying"; and, if she did not take her medicine, she would become "upset real quick and then [she] [would] want to fight and then the people [would] call the police on [her]." (Tr. 359). Plaintiff also testified that she took medication for high blood pressure and Aleve for pain. (Tr. 360).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2013; that she had not engaged in substantial gainful activity since September 1, 2009, her alleged onset date; that Plaintiff had the severe impairments of obesity, bipolar disorder, borderline intellectual functioning, and knee pain; that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment; that Plaintiff had the RFC to perform a range of medium work, in that she could follow simple instructions in a low stress environment with limited social interaction; Plaintiff could perform her past relevant work as an office cleaner; that, based on the testimony of a VE, there was also other work in the national economy which Plaintiff could perform; and that, therefore, Plaintiff was not disabled within the meaning of the Act.

Plaintiff contends that the ALJ's decision is not based on substantial evidence because the ALJ did not give proper weight to the opinions of Michael

Armour, Ph.D., who conducted a consultative examination of Plaintiff, Terry

Dunn, Ph.D, the State agency psychiatric consultant, and Veronica Banks,

Plaintiff's niece.  Plaintiff also contends that the ALJ did not properly consider her

credibility, as required by Social Security Ruling (SSR) 96-7p, because the ALJ

did not discuss inconsistencies between Plaintiff's testimony and the third-party

statement of her cousin, Ms. Banks.  (Doc 20).  For the following reasons, the

court finds that Plaintiff's arguments are without merit and that the ALJ's decision

is based on substantial evidence.

## A.      Plaintiff's Credibility:

The court will first address the ALJ's credibility findings as Plaintiff's

credibility is relevant to other factors, including the weight given to opinions of

record.   See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The

plaintiff] fails to recognize that the ALJ's determination regarding her RFC was

influenced by his determination that her allegations were not credible.") (citing

Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545,

416.945 (2010).   As set forth more fully above, the ALJ's credibility findings

should be affirmed if they are supported by substantial evidence on the record as a

whole; a court cannot substitute its judgment for that of the ALJ.  See Guilliams v.

Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin,

830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v.

Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).  For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that no medical source who examined Plaintiff found limitations consistent with disability.  (Tr. 25).  Indeed, a lack of significant restrictions imposed by a claimant's doctors is consistent with a finding that the claimant is not disabled.  See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work.") (citing Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir. 1996)).  See also Eichelberger, 390 F.3d at 590 (ALJ could find claimant not credible based in part on fact that no physician imposed any work related restrictions).

Second, the ALJ considered that Plaintiff's self-reported activities of daily living were inconsistent with the extreme limitations which she claimed she had. (Tr. 24).  While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, a claimant's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints.  See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (ALJ properly discounted plaintiff's credibility where, among other factors, plaintiff "was not unduly

restricted in his daily activities, which included the ability to perform some cooking, tak[ing] care of his dogs, us[ing] a computer, driv[ing] with a neck brace, and shop[ping] for groceries with the use of an electric cart"). See also Ponders v. Colvin, 770 F.3d 1190 (8th Cir. 2014) (holding that substantial evidence supported the ALJ's denial of disability benefits in part because claimant "performs light housework, washes dishes, cooks for her family, does laundry, can handle money and pays bills, shops for groceries and clothing, watches television, drives a vehicle, leaves her house alone, regularly attends church, and visits her family"); Roberson v. Astrue, 481 F.3d, 1020, 1025 (8th Cir. 2007) (holding that the ALJ's denial of benefits was supported based in part because Plaintiff fixed meals, did housework, shopped for grocers, and visited friends).

Moreover, to the extent Plaintiff urges the court to reweigh the evidence regarding Plaintiff's daily activities and draw its own conclusion in this regard, it is not the function of the court to do so. See Bates v. Chater, 54 F.3d 529, 531-32 (8th Cir. 1995) ("As we have stated many times, we do not reweigh the evidence presented to the ALJ, and it is the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses.") (internal citations, punctuation, and quotations omitted). In any case, Plaintiff's daily activities were only one of many factors considered by the ALJ when determining Plaintiff's credibility. (Tr. 19-25).

Notably, as considered by the ALJ, Plaintiff stated in a Function Report – Adult that she bought food; she sometimes played with her children, cooked, and did laundry, she drove a car and went out alone, although she did not like being alone or driving "to[o] much"; she spent time with others, watching television or movies; and she attended church on a regular basis. Plaintiff also indicated that she did not have problems squatting, bending, reaching, sitting, talking, hearing, concentrating, and using her hands. (Tr. 132-39). At the hearing, Plaintiff testified that she usually went places with others, mostly her children; that, on a good day, she would cook; that she sometimes tried to do crossword puzzles; that she played with her grandbaby; and that she tried to play solitaire. (Tr. 366-68). Also, it was noted, in September 2012, that Plaintiff lived independently. (Tr. 296).

Third, the ALJ considered that Plaintiff's treatment notes often reflected unremarkable mental status examinations. (Tr. 22-23). See Orrick v. Sullivan, 966 F.2d 368, 372 (8th Cir. 1992) (holding that an ALJ may discredit a claimant's subjective complaints where there are inconsistencies in the record; the ALJ may give more weight to the medical records than to a claimant's testimony); Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991). In this regard, an Initial Intake Assessment from the Hopewell Center (Hopewell), completed in February 2012, reflects that Plaintiff was appropriately dressed; she had appropriate affect and her

mood was stable; her recent and remote memory were intact; she was oriented to person, time, and place; Plaintiff's basic fund of knowledge was adequate; and she had insight to her history. (Tr. 299-303). In addition, April 2012 progress notes from the Hopewell Center reflect that Plaintiff was cooperative and calm and had good eye contact, coherent speech, appropriate affect and mood, adequate impulse control, intact thought process, and good memory, insight, judgment and sleep pattern. (Tr. 280). At other times, Plaintiff's concentration, memory, judgment and insight were reported as fair and it was noted that she had sleeplessness. (Tr. 282, 284, 286).

A September 2012 Adult Assessment from the Hopewell, which was signed by S.A. Raza, M.D., states that Plaintiff's appearance and behavior were appropriate; Plaintiff was oriented to person, place, and time; her mood, affect, thought content, speech, and motor activity were appropriate; Plaintiff had good eye contact; she was not a current danger to herself or others; and her insight and judgment were fair. (Tr. 294). In November 2012, Dr. Raza reported that Plaintiff was cooperative; her eye contact was fair; her psychomotor activity was calm; her speech was coherent; her affect and impulse control were appropriate; her mood was angry; her thought process was intact; her perceptions were normal; and her concentration, memory, judgment, and insight were fair. (Tr. 320). Dr. Raza reported, in January 2013, that Plaintiff was cooperative and had good eye

contact, calm psychomotor activity, soft speech, adequate affect, adequate impulse control, intact thought process, normal perceptions, fair concentration, memory, and judgment, and good sleep pattern. (Tr. 318).

Fourth, although Plaintiff was hospitalized in 2011 when she tried to commit suicide, as of September 2012, she had not been hospitalized for the prior twelve months. (Tr. 295). See Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination that claimant lacked credibility due in part to "absence of hospitalizations . . . , limited treatment of symptoms, [and] failure to diligently seek medical care"); 20 C.F.R. § 404.1529(c)(3)(v) (the agency will consider the claimant's treatment when evaluating her symptoms); Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (citing Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)).

Fifth, it was noted by health care providers that Plaintiff was non-compliant with treatment recommendations. In this regard, it was reported, in February 2012, that Plaintiff had not taken her medications for over two years. (Tr. 303). See Wildman v. Astrue, 596 F.3d 959, 964-65 (8th Cir. 2010) (noncompliance is a basis for discrediting a claimant; when claimant was compliant with dietary recommendations his pain was under good control).

Sixth, the ALJ considered what Plaintiff told medical providers. (Tr. 23-24). Notably, in November 2012, Plaintiff said she was doing "so-so" (Tr. 320), and, in January 2013, Plaintiff said she was doing "ok" (Tr. 318). Contradictions between a claimant's sworn testimony and what she actually told physicians weighs against the claimant's credibility. Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006).

Seventh, as considered by the ALJ, when Plaintiff presented at Hopewell, in November 2012, she complained of financial problems. (Tr. 320). The court notes that situational depression is not disabling. See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations).

Eighth, the court notes that Plaintiff told Dr. Armour that Prozac helped her "feel sad not so much." (Tr. 59). Conditions which can be controlled by treatment are not disabling. See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir.

2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling)

Ninth, as considered by the ALJ, Plaintiff did not receive the type of medical treatment one would expect for a totally disabled individual in that Plaintiff received treatment for her mental impairment from a nurse practitioner and not a psychiatrist. (Tr. 24, 280-92). Conservative treatment is consistent with discrediting a claimant's allegation of disabling pain. Kamann v. Colvin, 721 F.3d 945, 950-51 (8th Cir. 2012)

Tenth, as considered by the ALJ, Plaintiff's niece, Ms. Banks, stated in a Third Party Function Report, dated November 5, 2011, that Plaintiff had good and bad days; on good days, Plaintiff could cook, clean, and go shopping; Plaintiff could do puzzles, watch movies, and play video games; Plaintiff was unable to finish tasks; she had difficulty being around large groups of people; Plaintiff was able to go to church; and Plaintiff had a bad shoulder and was unable to walk more than two blocks before she is tired. Ms. Banks also reported that Plaintiff drove a car, went out alone, shopped in stores for food and household supplies, and paid bills. (Tr. 20, 111-18).

Plaintiff argues that the ALJ erred by not specifying the weight he gave to the Third Party Function Report completed by Ms. Banks, by failing to explain why he did not rely on Ms. Banks's opinion, and by his not going into greater

detail regarding Ms. Banks's opinion. While the Eighth Circuit Court of Appeals has frequently criticized the failure of an ALJ to consider subjective testimony of family members and others and while such testimony must be considered, no case directs that reversal is appropriate where an ALJ fails to specifically do so when he has discredited the testimony of the claimant. See e.g., Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988). Smith v. Heckler, 735 F.2d 312, 317 (8th Cir. 1984). Moreover, the ALJ may discount corroborating testimony on the same basis used to discredit a claimant's testimony. See Black v. Apfel, 143 F.3d 383, 387 (8th Cir. 2006). Thus, to the extent that the same evidence relied upon by the ALJ when discrediting Plaintiff's testimony was the same evidence which supported his discrediting the testimony of Plaintiff's niece, the ALJ's failure to address or discount the opinion of Plaintiff's niece is "inconsequential." Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). See also Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) (holding that an ALJ's decision need not be reversed where he failed to consider testimony which would not have had an effect on the outcome of the case). The court finds, therefore, that the ALJ's arguably failing to specify the weight given to Ms. Banks's Third Party Function Report and to explain why he did not rely on Ms. Banks's opinion, and his arguably not going into greater detail regarding Ms. Banks's opinion do not warrant reversal.

In any case, the court finds that any deficiencies in regard to the ALJ's consideration of Ms. Banks's opinion do not affect the outcome of the case. Welch v. Colvin, 765 F.3d 926, 929 (8th Cir. 2014) (ALJ's failure to explicitly address applicable SSR 96-9p was an arguable deficiency in opinion writing that had no practical effect on decision because ALJ found Plaintiff's limitations had no more than a slight impact on claimant's ability to perform full range of sedentary work; therefore it was not a sufficient reason to set aside the ALJ's decision).

Eleventh, to the extent Plaintiff argues that the ALJ did not consider, when determining Plaintiff's credibility, a statement by Dr. Dunn, in a Psychiatric Technique Form, that there was "medical evidence" to support Plaintiff's allegation of depression (Doc. 15 at 12), an ALJ is not required to discuss every credibility factor, so long as he recognizes and considers the applicable analytical framework. See Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004). In any case, the mere fact that Plaintiff had depression did not render her disabled.[1] See

_____

[1] If a mental impairment is found, the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. 20 C.F.R.§ 404.1520a(b)(1). The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. 20 C.F.R. § 404.1520a(c)(2). Those areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3).

<u>Dunlap v. Harris</u>, 649 F.2d 637, 638 (8th Cir. 1981).  Also, Dr. Dunn's statement is consistent with the ALJ's ultimate RFC determination which limited Plaintiff, with medication and therapy, to following simple instructions in a low stress environment with limited social interaction.

**B.    Dr. Armour's Opinion:**

Dr. Armour saw Plaintiff, on December 17, 2011, for a consultative psychological evaluation.  Pursuant to this evaluation, Dr. Armour administered the Wechsler Adult Intelligence Scale-IV (WAIS-IV), which test demonstrated that Plaintiff had a Full Scale IQ score in the extremely low range.  Dr. Armour opined that Plaintiff's WAIS-IV scores were not a valid measure of her current level of intellectual functioning when compared to her reported educational and work history and her having a commercial driver's license and working for several months as an "over the road" truck driver.  Dr. Armour further opined that Plaintiff's long-term memory was grossly intact based upon her ability to give a detailed social history; her immediate memory was intact in that she could focus

---

In the areas of daily living, social functioning, and concentration, persistence or pace, the ALJ found Plaintiff had moderate restriction.  <u>See</u> 20 C.F.R. § 404.1520a(c)(4).  In regard to episodes of decompensation, the ALJ found that Plaintiff had experienced no episodes of decompensation, which had been of extended duration.  <u>See</u> 20 C.F.R. § 404.1520a(d)(1) (when "the degree of []limitation in the first three functional areas" is "none" or "mild" and "none" in the area of decompensation, impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities").

on Dr. Armour's questions; her recent memory appeared more impaired; and Plaintiff's insight and judgment were currently adequate for her safety. (Tr. 307-309).

Dr. Armour further opined that Plaintiff had moderate to, at times severe, limitations in regard to restrictions of daily living, in that she did some basic tasks and reported she no longer cleaned and that she isolated herself from others. Dr. Armour opined that Plaintiff had moderate to, at times, severe limitations in regard to maintaining social functioning in that Plaintiff stated that she did not want to be around other people, that she would get sad and could not stop crying, and that she isolated herself from others. In regard to deficiencies of concentration, persistence or pace, Dr. Armour opined that Plaintiff had moderate limitations, based on her reporting that she had a lack of interest in carrying out basic daily activities. As for repeated episodes of deterioration in a work-like setting, Dr. Armour noted that Plaintiff had not been hospitalized in an inpatient psychiatric unit. He further opined that Plaintiff had moderate limitations in regard to understanding and remembering instructions, sustaining concentration and persistence in tasks, and interacting socially and adapting to her environment. (Tr. 309-11).

As for Plaintiff's argument that the ALJ gave no weight to Dr. Armour's opinion (Doc. 15 at 10-12), Plaintiff is mistaken, as the ALJ specifically

considered Dr. Armour's opinion throughout his opinion and, after considering all the evidence of record, stated that he was giving "great weight" to Dr. Armour's opinion (Tr. 18, 21-22, 25).

As for Plaintiff's suggesting that the ALJ should have adopted Dr. Armour's opinion in its entirety, an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of different medical sources. See Martise, 631 F.3d at 927. Rather, it is the job of the ALJ to resolve conflicts among the credible evidence of record. See Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians.") (internal quotation marks omitted).

Although Plaintiff argues that the ALJ did not address Dr. Armour's opinion that Plaintiff had "moderate to at times severe" limitations in performing activities of daily living and maintaining social functioning and "moderate" limitations in deficiencies of concentration, persistence, or pace (Doc. 15 at 10-11), the ALJ's failure to specifically cite specific evidence does not mean he did not consider that evidence. See Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). The Eighth Circuit, moreover, has noted

that where an ALJ specifically references the findings of a medical source, it is "highly unlikely" that the ALJ did not consider and reject aspects of the sources opinion which the ALJ did not specifically mention. Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) ("Given the ALJ's specific references to findings set forth in Dr. Michaelson's notes, we find it highly unlikely that the ALJ did not consider and reject Dr. Michaelson's statement that Wildman was markedly limited.") (quotation omitted).

Further, in determining Plaintiff's RFC, the ALJ imposed considerable mental limitations on Plaintiff, which accommodated Dr. Armour's finding that Plaintiff had depression and borderline intellectual functioning as well as moderate to severe limitations in regard to daily activities and maintaining social functioning in that the ALJ limited Plaintiff to simple low stress work which required following simple instructions and which required limited social interaction. See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrating that the ALJ gave some credit to the opinions of the treating physicians); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some

credit to [the treating doctor's] medical opinions.").  In conclusion, the court finds

that the ALJ gave proper weight to Dr. Armour's opinion and that the ALJ's

decision, in this regard, is based on substantial evidence.

## C.    Dr. Dunn's Opinion:

Dr. Dunn, who was a State agency reviewing psychologist, found, in a

January 2012 Mental RFC Assessment, that Plaintiff was moderately limited in

regard to the following abilities:    understanding and remembering detailed

instructions, carrying out detailed instructions, maintaining attention and

concentration for extended periods, performing activities within a schedule,

maintaining regular attendance, and being punctual within customary tolerances,

sustaining an ordinary routine without special supervision, working in

coordination or proximity to others without being distracted by them, completing

a normal workday and workweek without interruptions from psychologically

based symptoms, interacting appropriately with the general public, getting along

with coworkers without distracting them or exhibiting behavioral extremes,

maintaining socially appropriate behavior and adhering to basic standards of

neatness and cleanliness, responding appropriately to changes in the work setting,

traveling in unfamiliar places, and setting realistic goals or making plans

independently of others.  Dr. Dunn also found Plaintiff was not significantly

limited in regard to the following:    remembering locations and work-like

procedures, understanding and remembering very short and simple instructions, carrying out very short and simple instructions, making simple work-related decisions, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, and being aware of normal hazards and taking appropriate precautions. (Tr. 215-17).

Also, in a Psychiatric Review Technique Form, Dr. Dunn opined that Plaintiff had moderate limitations in restrictions of activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace, and that she had one or two episodes of decompensation, each of an extended duration. Dr. Dunn opined that Plaintiff had depression, and that she had the RFC for simple work with minimal interaction with peers and away from the public. Upon reaching his conclusions, Dr. Dunn reported that he reviewed Plaintiff's medical records. (Tr. 218-29).

The ALJ considered Dr. Dunn's opinion, noting that he found that Plaintiff retained the ability to perform simple work with limited interaction from peers and away from the public. The ALJ concluded that those limitations were consistent with the evidence, and the ALJ, therefore, determined that great weight should be given to Dr. Dunn's opinion. (Tr. 25). Plaintiff argues, for several reasons, that the ALJ gave improper weight to Dr. Dunn's opinion.

Plaintiff argues that the ALJ should have discussed Dr. Dunn's opinion in greater detail, specifically that the ALJ should have discussed the twenty separate categories in Section 1, Summary Conclusions, of the Mental RFC Assessment form in which categories Dr. Dunn rated Plaintiff's limitations. While the ALJ did not do so, it does not mean he did not consider Dr. Dunn's findings in the twenty categories. See Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). In any case, the ALJ did specifically reference Dr. Dunn's finding in Section 3 on the Mental RFC Assessment form, in which section the reviewer opines about a claimant's RFC. As stated above, the ALJ noted Dr. Dunn's opinion in Section 3 that Plaintiff could perform simple work with limited interaction from peers and away from the public. (Tr. 25, 217). As explained by Defendant, the Program Operations Manual (POMS) DI 24510.065 provides that Section 3 is for recording the formal narrative mental RFC assessment and provides for a narrative statement for each of the subsections in Section 1. Thus, Section 3 summarizes findings in Section 1. Notably, the Eighth Circuit holds that the POMS control in social security disability benefits cases unless they are inconsistent with the Regulations or plainly erroneous. Rodysill v. Colvin, 745 F.3d 947, 950 (8th Cir. 2014).

To the extent Plaintiff argues that the ALJ did not explain why he gave great weight to Dr. Dunn's opinion, as expressed in a January 2012 Mental RFC Assessment, after addressing the medical evidence, in great detail, the ALJ stated that Dr. Dunn's opinion was consistent with the evidence of record and that is why he gave it great weight. To the extent Plaintiff argues that the ALJ should have specified the manner in which Dr. Dunn's opinion was consistent with the evidence of record, the ALJ did state that Dr. Dunn's opinion was consistent with Dr. Armour's opinion, and, as discussed above, the ALJ addressed, in detail, Dr. Armour's findings pursuant to his examination and testing of Plaintiff. In conclusion, the court finds that the ALJ gave proper weight to Dr. Dunn's opinion, that the ALJ's consideration of Dr. Dunn's opinion is based on substantial evidence, and that Plaintiff's suggestions to the contrary are without merit.

**D.     ALJ's RFC Determination:**

The Regulations define RFC as "what [the claimant] can do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own

description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified, in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); Eichelberger, 390 F.3d at 591.

Upon making an RFC assessment, an ALJ must first identify a claimant's functional limitations or restrictions, and then assess her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). The RFC need only include a claimant's credible limitations. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). Pursuant to this requirement, the ALJ found that Plaintiff's subjective complaints were not credible and further found that her functional limitations permitted her to perform medium work, which involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 CFR § 416.967(c). The ALJ also found that Plaintiff was limited to following simple instructions in a low stress environment with limited social interaction. The court finds that the ALJ's RFC determination is based on substantial evidence and consistent with the Regulations and case law.

After determining Plaintiff's RFC and soliciting the testimony of a VE, the ALJ found that Plaintiff could perform her past relevant work as an office cleaner as it was actually and generally performed. If a claimant is found to be able to perform the duties of her past relevant work, then she is considered not disabled and therefore ineligible for benefits. See Bowen v. City of New York, 476 U.S.

467, 471 (1986); <u>Martin v. Sullivan</u>, 901 F.2d 650, 652 (8th Cir. 1990); 20 C.F.R. § 1520(f).

Although the ALJ was not required to proceed further with the sequential analysis, the ALJ alternatively found, after considering the VE's testimony, that there was other work, available in the national economy in significant numbers, which Plaintiff could perform. <u>See</u> <u>Martise v. Astrue</u>, 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion . . . that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting <u>Lacroix v. Barnhart</u>, 465 F.3d 881, 889 (8th Cir. 2006)); <u>Robson v. Astrue</u>, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations). As such, consistent with the Regulations and case law, the ALJ found Plaintiff not disabled.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence, on the record as a whole, supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint, Brief in Support of Complaint, and Reply (Docs. 1, 15, 21) is **DENIED**;

**IT IS ORDERED** that a separate judgment be entered incorporating this Memorandum and Order.

Dated this 4th day of June 2015.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE